# IN THE UNITED STATES DISTRICT COURT OF
# EASTERN MISSOURI

| | | |
|---|---|---|
| VALERIE SMITH, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| HAMMER & STEEL, INC., | ) | |
| | ) | |
| Serve: | ) | |
| CT Corporation System | ) | |
| 120 S. Central Avenue | ) | |
| Clayton, Missouri 63105 | ) | |
| | ) | |
|    Defendant. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** Plaintiff Valerie Smith, by and through counsel, and for her Complaint against Defendant Hammer & Steel, Inc., states and alleges as follows:

### Parties

1. Plaintiff is resident of Swansea, Illinois. During her employment with Defendant, Plaintiff was a resident of St. Louis, Missouri.

2. Defendant is a corporation registered in the State of Missouri with a principal place of business in St. Louis County, Missouri, at 11916 Missouri Bottom Road, St. Louis, Missouri 63042.

### Jurisdiction and Venue

3. Jurisdiction of this Court is involved pursuant to 28 U.S.C. §1331 in that this action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.

4. Venue in this Court is proper in that Defendant resides in the Eastern District of Missouri and the events giving rise to Plaintiff's claims occurred in the Eastern District of Missouri.

**Facts Common to All Claims**

5. Plaintiff was born in October 1958.

6. Defendant employed Plaintiff as a receptionist in its St. Louis home office from October 3, 2016, to November 20, 2021.

7. Plaintiff reported to Defendant Controller Debbie Blackmon ("Blackmon").

8. During her employment with Defendant, Plaintiff performed the duties of her position in a satisfactory or more than satisfactory manner.

9. At all times relevant herein, Plaintiff was qualified to perform the essential functions of her position.

10. During her employment, Plaintiff was one of the oldest persons working for Defendant. Upon information and belief, in or around November 2020, Defendant employed around 49 persons. Only four persons were older than Plaintiff. One of those persons was a 65-year-old male employee who worked for Defendant in its St. Louis shop.

11. During the course of her employment with Defendant, Plaintiff's husband, Larry, was diagnosed with cancer.

12. Plaintiff's husband's cancer was a physical impairment that substantially limited him from performing major life activities including but not necessarily limited to the ability to care for himself.

13. In or around early January 2020, Plaintiff's husband's condition began to deteriorate. Around that time, Plaintiff asked Blackmon about taking an unpaid leave of absence to care for her husband.

14. Upon information and belief, Blackmon discussed Plaintiff's request for leave with Defendant Vice President and Chief Financial Officer Robert Strobing ("Strobing"). Upon further information and belief, Strobing denied Plaintiff's request.

15. Strobing denied the request because he believed that Defendant was not required to accommodate Plaintiff's leave request under the Family Medical Leave Act. To the best of Plaintiff's knowledge, Strobing never discussed Plaintiff's request with his supervisors or the owners of the company.

16. Plaintiff continued working for Defendant after Strobing denied her request for unpaid leave.

17. At all times relevant herein, Blackmon and Strobing knew that Plaintiff's husband had a disability, i.e., cancer. Upon information and belief, Defendant's owner also knew that Plaintiff's husband had cancer.

18. In or around November 2020, Plaintiff's husband's condition deteriorated even further. On the morning of Friday, November 13, 2020, Plaintiff had to call 911 for her husband after he fell out of the bed, and she could not get him up. As a result, Plaintiff was late to work that day.

19. Later in the day on November 13, 2020, Blackmon found Plaintiff crying in the main office bathroom. Plaintiff told Blackmon that she was afraid her husband's cancer would cause her to lose her job. Blackmon showed concern for Plaintiff and told Plaintiff to go home for the day.

20. Blackmon gave Plaintiff the following week off from work so that Plaintiff could arrange in-home care for her husband during the day while Plaintiff was at work.

21. Plaintiff spent that week from work arranging in-home care. She contacted family members in Illinois who agreed to come stay with her and Larry beginning on Monday, November 23, 2020.

22. Blackmon, Strobing, and Defendant's owner all knew that Plaintiff planned to return to work on Monday, November 23, 2020.

23. On Friday, November 20, 2020, Plaintiff received a phone call from Defendant Human Resources Specialist Michelle Rothwell ("Rothwell").

24. Rothwell told Plaintiff that Defendant terminated her (Plaintiff) for abandoning her job.

25. Plaintiff attempted to explain to Rothwell that she did not abandon her job; that she was given the week off to find care for her husband; that she had arranged care; and that she planned to return to work on Monday.

26. Plaintiff asked Rothwell if she could speak with Defendant's owner, but Rothwell refused.

27. Plaintiff was 62 years old on the date of her termination.

28. Soon after Plaintiff's termination, in or around December 2020, Strobing sought to terminate the male 65-year-old employee who worked in the shop.

**Factual Allegations Related to the Charge of Discrimination and Equitable Tolling**

29. On July 28, 2021, Plaintiff contacted an attorney about her termination. Plaintiff and the attorney spoke via telephone that day.

30. During the July 28, 2021, telephone conversation, the attorney notified Plaintiff that the deadline for Plaintiff to file a charge of discrimination under state law with the Missouri Commission on Human Rights had already passed but that Plaintiff could still file a charge under federal law with the Equal Employment Opportunities Commission ("EEOC").

4

31. On July 28, 2021, the attorney sent Plaintiff a letter (via First Class mail) with a proposed retainer agreement.

32. Plaintiff promptly signed the retainer agreement and returned the agreement to the attorney. Plaintiff also paid a retainer fee to the attorney.

33. Pursuant to the terms of the retainer agreement, Plaintiff retained the attorney to represent her in the matter of any claims that Plaintiff may have against Defendant for age discrimination, disability discrimination, and race discrimination.  The attorney agreed to investigate the claims with due and proper diligence, and to file an EEOC charge for Plaintiff.

34. Plaintiff relied upon her attorney to ensure that all deadlines and requirements related to the filing of an EEOC charge were met.

35. The attorney told Plaintiff that she had a year from the date of her termination to file an EEOC charge.

36. The attorney prepared a draft charge of discrimination for Plaintiff to review and sign.  On September 14, 2021, the attorney sent the first draft to Plaintiff via First Class mail.

37. Plaintiff signed the first draft of the charge on September 22, 2021, and promptly returned the charge to her attorney via First Class mail.

38. The attorney received the signed charge in the mail on some date between September 23, 2021, and September 28, 2021.  The attorney and Plaintiff discussed the charge via telephone and decided to make edits.

39. On September 28, 2021, the attorney sent Plaintiff a second draft (via First Class mail) for her review and signature.

40. Plaintiff signed the second draft charge on October 5, 2021, and promptly returned the charge to her attorney via First Class mail pursuant to the attorney's instructions.

41. On October 12, 2021, Plaintiff's attorney filed Plaintiff's charge with the EEOC by sending a copy of the charge via email. The charge included allegations of age discrimination, race discrimination, and disability discrimination based on Plaintiff's association with her husband.

42. Based on her attorney's representation, Plaintiff believed that her charge was timely filed with the EEOC since it was filed within a year of the date of her termination.

43. The EEOC docketed the charge that Plaintiff signed on October 12, 2021, as Charge No. 560-2022-00062 (hereinafter the "Charge").

44. The EEOC assigned the Charge to an investigator. Defendant was notified of the Charge and submitted a position statement in response.

45. The EEOC issued Plaintiff a notice of right to sue letter for the Charge on July 28, 2022. A copy of that letter is attached hereto as Exhibit 1.

46. On August 9, 2022, Plaintiff's attorney notified Plaintiff via telephone that the Charge was filed outside of the 300-day deadline to file a charge with the EEOC. Plaintiff's attorney notified Plaintiff on that date that she (the attorney) miscalculated the deadline.

47. Plaintiff was completely unaware that her attorney missed the charge filing deadline until the August 9, 2022, phone conversation.

48. Plaintiff does not have any legal training. She relied entirely on her attorney to ensure that the filing requirements were met with regards to her charge against Defendant. Plaintiff acted diligently in responding to all of her attorney's requests. She was not aware of the 300-day charge filing deadline and rightfully assumed that her attorney would timely file

6

her charge. The circumstances related to the missed filing deadline were completely out of Plaintiff's hands. As such, the doctrine of equitable tolling should apply to the missed filing deadline with the EEOC.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE ADEA

49. Plaintiff incorporates by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

50. At all relevant times, Plaintiff was an employee as defined by the ADEA, 29 U.S.C. § 630(f), in that she was an individual employed by an employer and is therefore entitled to the protections of the statute.

51. At all times relevant herein, Defendant was an employer, as defined by the ADEA, 29 U.S.C. § 630(b), in that it was engaged in an industry affecting commerce and employed twenty (20) or more persons for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

52. Defendant would not have terminated Plaintiff but for her age.

53. Defendant would have re-hired or recalled its termination decision after hearing Plaintiff's explanation for her absence but for her age.

54. Defendant's actions and/or decisions concerning Plaintiff's employment constitute a violation of the ADEA, 29 U.S.C. § 623.

55. As a direct and proximate cause of Defendant's actions and decisions, Plaintiff sustained and will continue to sustain lost wages and lost benefits of employment.

56. As a direct and proximate result of Defendant's actions and decisions, Plaintiff incurred and will continue to incur attorneys' fees and costs of litigation.

57. In making its decisions and acting with regards to Plaintiff's employment, Defendant acted with reckless disregard for the law such that its conduct was willful and warrants an award of additional damages against Defendant for willfulness.

    WHEREFORE, Plaintiff prays that this Court, after trial by jury, find for Plaintiff and against Defendant, and enter judgment for Plaintiff for her lost wages and benefits of employment, and prejudgment interest on the same; front pay; additional and double damages for willfulness; attorneys' fees and costs of litigation; equitable and injunctive relief; and such other relief that this Court deems just and proper.

## COUNT II

## DISCRIMINATION IN VIOLATION OF THE ADA

58. Plaintiff incorporates by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

59. At all relevant times herein, Plaintiff was a qualified individual, as defined by the ADA, 42 U.S.C. § 12111(8), in that she was a person who could perform the essential functions of the position she held with Defendant

60. At all relevant times herein, Defendant was a covered entity and/or an employer, as defined by the ADA, 42 U.S.C. § 12111(2) and (5), in that in that it was engaged in an industry affecting commerce and employed twenty (20) or more persons for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

61. Defendant committed an adverse employment action against Plaintiff by terminating her employment on Friday, November 20, 2020, and by not allowing her to return to work (as planned) on Monday, November 23, 2020.

62. Defendant knew when it took those actions and/or made decisions related to those actions that Plaintiff's husband had a disability in the form of cancer.

63. Plaintiff's husband's disability was a determining factor in Defendant's actions and/or decisions.

64. Defendant's actions and decisions concerning Plaintiff's employment constitute a violation of 42 U.S.C. § 12111(b)(4).

65. As a direct and proximate cause of Defendant's actions and decisions, Plaintiff sustained and will continue to sustain lost wages and lost benefits of employment.

66. As a direct and proximate result of Defendant's actions and decisions, Plaintiff incurred and will continue to incur attorneys' fees and costs of litigation.

67. In making its decisions and acting with regards to Plaintiff's employment, Defendant acted with reckless disregard for the law such that its conduct was willful and warrants an award of additional damages against Defendant for willfulness.

**WHEREFORE**, Plaintiff prays that this Court, after trial by jury, find for Plaintiff and against Defendant, and enter judgment for Plaintiff for her lost wages and benefits of employment, and prejudgment interest on the same; front pay; additional and double damages for willfulness; attorneys' fees and costs of litigation; equitable and injunctive relief; and such other relief that this Court deems just and proper.

## COUNT III

## FMLA RETALIATION AND INTERFERENCE

68. Plaintiff incorporates by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

69. At the time of her discharge, Plaintiff was an eligible employee within the meaning of the Family Medical Leave Act ("FMLA").

70. Defendant had available or held itself out as having available FMLA leave for employees.

71. Plaintiff was eligible for FMLA leave during her employment.

72. Defendant interfered with Plaintiff's right to take FMLA leave.

73. Defendant discharged Plaintiff in retaliation for her exercise of rights under the FMLA.

74. In discharging Plaintiff, Defendant willfully violated 29 U.S.C. § 2615.

75. As a direct and proximate result of Defendant's actions, Plaintiff suffered loss of employment and continues to suffer loss of income and loss of other employee benefits.

**WHEREFORE**, Plaintiff prays that this Court, after trial by jury, find for Plaintiff and against Defendant, and enter judgment for Plaintiff for her lost wages and benefits of employment, and prejudgment interest on the same; front pay; additional and double damages for willfulness; attorneys' fees and costs of litigation; equitable and injunctive relief; and such other relief that this Court deems just and proper.

Respectfully submitted,

KENNEDY HUNT, P.C.

By: */s/ Nicole A. Matlock*
Nicole A. Matlock, #66894MO
KENNEDY HUNT, P.C.
4500 W. Pine Blvd.
St. Louis, MO 63108
(314) 872-9041
(314) 872-9043 (Fax)
nmatlock@kennedyhuntlaw.com

*Attorneys for Plaintiff*